Scott S. **WORKMAN**, Petitioner,

v.

Harold J. **CARDWELL**, Warden,
Respondent.

No. C–71–1133.

United States District Court,
N. D. Ohio, E. D.

March 7, 1972.

Paul Mancino, Jr., Cleveland, Ohio, for petitioner.

Jeffrey L. McClelland, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

This is a petition for a writ of habeas corpus in which the petitioner raises numerous issues. He contends that the proceedings in state court constituted a deprivation of numerous constitutional rights and guarantees. He was indicted by the grand jury of Cuyahoga County, Ohio, alleging that he, while armed with a dangerous weapon, did rob a grocery store on or about January 9, 1969. He was found guilty of that offense by a court and jury of the Court of Common Pleas. That conviction was affirmed by the Court of Appeals, and the Supreme Court of Ohio dismissed his appeal as of right because they felt that no constitutional question was presented. The petitioner's contentions will be dealt with seriatum.

He first contends that the showing by a law enforcement officer of a mug shot of the accused to the victim of the crime singly with accompanying words of suggestion from the officer after the accused was charged with the offense without the presence of counsel or the waiver thereof by the accused denied accused the right to counsel and due process in that the identification procedure was unnecessarily suggestive. The day following the commission of the robbery an arrest warrant was issued for the petitioner. On the following day a police officer went to the victim and showed him a photograph (mug shot) of the petitioner. The victim identified the petitioner as the man who committed the offense. When the victim reported the offense, he examined twenty or more photographs at police headquarters and did not identify any as the robber. Only subsequently when he was presented with a single photograph did the victim identify the petitioner as the robber. The Court of Common Pleas denied petitioner's motion to suppress on this issue. The victim contended then that his in-court identification was in no way influenced by any police activity at the second trial. However, at the first trial it seems that he was influenced (Record, 138, 145–6).

This issue has never been squarely decided by the United States Supreme Court. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) dealt with whether court room identifications of an accused at trial are to be excluded because the accused was exhibited to the witness before trial at a post-indictment lineup without notice to and in the absence of counsel. In Simmons .v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) FBI agents obtained and showed separately to each of five bank employees who had witnessed a robbery the day before certain group photographs including petitioner and another, both of whom were subsequently indicted for the crime. At the trial none of the photographs were introduced, but each of the five eye witnesses identified the petitioner as one of the robbers.

Noting that the process of identification by photograph has certain hazards, the danger of a mis-identification is lessened by cross-examination at trial. The Court ruled, per Harlan, J.:

"We are unwilling to prohibit its employment, either in the exercise of

our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, [87 S.Ct. 1967, 1972–1973, 18 L. Ed.2d 1199] and with decisions of other courts on the question of identification by photograph.

"Applying the standard to this case, we conclude that petitioner Simmons' claim on this score must fail. In the first place, it is not suggested that it was unnecessary for the FBI to resort to photographic identification in this instance. A serious felony had been committed. The perpetrators were still at large. The inconclusive clues which law enforcement officials possessed led to Andrews and Simmons. It was essential for the FBI agents swiftly to determine whether they were on the right track, so that they could properly deploy their forces in Chicago and, if necessary, alert officials in other cities. The justification for this method of procedure was hardly less compelling than that which we found to justify the 'one-man lineup' in Stovall v. Denno, *supra.*

"In the second place, there was in the circumstances of this case little chance that the procedure utilized led to mis*identification of Simmons.* The robbery took place in the afternoon in a well-lighted bank. The robbers wore no masks. Five bank employees had been able to see the robber later identified as Simmons for periods ranging up to five minutes. Those witnesses were shown the photographs only a day later, while their memories were still fresh. At least six photographs were displayed to each witness. Apparently, these consisted primarily of group photographs, with Simmons and Andrews each appearing several times in the series. Each witness was alone when he or she saw the photographs. There is no evidence to indicate that the witnesses were told anything about the progress of the investigation, or that the FBI agents in any other way suggested which persons in the pictures were under suspicion.

"Under these conditions, all five eyewitnesses identified Simmons as one of the robbers. None identified Andrews, who apparently was as prominent in the photographs as Simmons. These initial identifications were confirmed by all five witnesses in subsequent viewings of photographs and at trial, where each witness identified Simmons in person. Notwithstanding cross-examination, none of the witnesses displayed any doubt about their respective identifications of Simmons. Taken together, these circumstances leave little room for doubt that the identification of Simmons was correct, even though the identification procedure employed may have in some respects fallen short of the ideal. We hold that in the factual surroundings of this case the identification procedure used was not such as to deny Simmons due process of law or to call for reversal under our supervisory authority." 390 U.S. 384–386, 88 S.Ct. 971 (footnote omitted).

While the facts of this case are slightly different from that of *Simmons,* the principle of that case is apposite. Showing a single photograph of the petitioner to the victim might be inherently prejudicial even when the victim had a sufficient opportunity to observe the petitioner at the time of the robbery. The practice used by the police in this case, however, is to be frowned upon. See United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970); Thompson v. State, 85 Nev. 134, 451 P.2d 704 (1969); United States ex rel. Rivera v. McKendrick, 448 F.2d 30 (2d Cir. 1971). But this Court

cannot state as unequivocally as did the Ninth Circuit in United States v. Fowler, 439 F.2d 133 (9th Cir. 1971) that the showing of a single photograph to the victim amounts to a per se due process violation. An examination of the facts in each case is required. The use of a single photograph is undeniably suggestive, and seems to have been in this case, and therefor constituted a due process violation.

■ Petitioner's second claim is that the trial judge abused his discretion in not discharging a juror for cause, thereby forcing petitioner to use one of his limited peremptory challenges. The limitation on peremptory challenges is a matter of state law, and it cannot be held, under the circumstances, that the failure to dismiss a juror constitutes a cognizable claim in habeas corpus. See Pierce v. Page, 362 F.2d 534 (10th Cir. 1966).

■ The petitioner contends that his car was searched without a warrant, and not incident to his arrest, contrary to the strictures of the Fourth Amendment. The automobile bore only one California license plate, which had expired, and was lawfully parked on a side street directly across from the parking lot adjoining the premises that were robbed. It remained there for at least three hours. After the police were notified that a robbery was in progress, the automobile was placed under surveillance by the Parma Heights police. After the three hours had elapsed, it was towed by the police. Before towing, the police entered the automobile and found therein a brown manila envelope of the Ohio License Bureau lying on the front seat, which was found to contain license plates issued to the petitioner. Since the police had no reason to know who owned the automobile, they were permitted to open such an envelope in hopes of ascertaining the identity of the owner of this "abandoned" car. No cases are presented indicating that such a "search" is impermissible. In the instant case the search did not reveal any evidence except for the identity of the owner and as such

falls within Cooper v. California, 386 U. S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). See also Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The cases cited by the petitioner are not apposite to these facts. Since the envelope was in plain view and the automobile was without Ohio license plates or any valid license plates and the examination of the plates merely indicated who was the owner of the car, this search does not fall within the prohibitions of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971).

■ The petitioner was arrested on a warrant which was supported by an affidavit alleging only the statutory description of the offense. The warrant was issued by the chief law enforcement officer of Parma Heights, who is also the mayor. It is contended that the warrant was void because no determination of probable cause was made prior to the issuance of the warrant and that the Ohio arrest procedure is unconstitutional. The respondent argues correctly that defects in the arrest procedure are not grounds for relief in federal habeas corpus. Fernandez v. Klinger, 346 F.2d 210, 212 (9th Cir. 1965) and cases cited.

At his trials the petitioner took the stand in his own defense. He was cross-examined by the prosecutor who asked petitioner various questions concerning his prior convictions in an attempt to impeach his credibility. The petitioner was required to answer these questions over the objections of counsel. The trial judge was informed that the defendant did not have counsel present at either of his two juvenile convictions in 1955 and 1956 in the Third District Court in Maine, or at his 1958 Dyer Act conviction in the United States District Court for the District of Maine (Record 430). At his juvenile hearings the petitioner contends that he was not represented by counsel. The records of that court are silent on that issue. In federal court the petitioner voluntarily waived counsel. See Workman v. United States, 337 F.2d 226 (1964). (Judgment vacated on other

grounds.) Since the records of the Third District Court do not show whether petitioner was represented by counsel, it should be assumed that, in fact, he had no counsel present at those hearings. It is argued that the introduction of these allegedly constitutionally infirm convictions so prejudiced the jury that the petitioner's trial was without the requisite due process. Since these convictions were obtained at juvenile proceedings which were many years prior to the landmark decision of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) which held, *inter alia,* that there was no material difference between adult and juvenile proceedings on the issue of counsel, this Court must examine whether *In re Gault* may be applied retroactively. There is no doubt that such convictions would be inadmissible if they were obtained after the petitioner was convicted as an adult.

In Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court stated that the prosecution may not use prior convictions which were obtained without the benefit or assistance of counsel or the waiver thereof in a subsequent trial. Mr. Justice Douglas, speaking for the Court, stated:

"To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U.S. 269 [86 S.Ct. 1477, 16 L.Ed.2d 526]) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

"The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial and we are unable to say that the instructions to disregard it may be constitutional error 'harmless beyond a reasonable doubt' within the meaning of Chapman v. [State of] California,

386 U.S. 18, [87 S.Ct. 824, 17 L.Ed.2d 705.]" 389 U.S. at 115, 88 S.Ct. at 262.

See also, Johnson v. State, 9 Md.App. 166, 168, 263 S.E.2d 232, 238 (1970); People v. Coffey, 67 Cal.2d 204, 218–19, 60 Cal.Rep. 457, 467, 430 P.2d 15, 25 (1967).

The question of the retroactivity of *Gault* has been widely discussed in scholarly journals (See Ketcham, What Happened to Whittington; 37 Geo.Wash. L.Rev. 324 (1968); Dorsen and Rezneck, In re Gault and the Future of Juvenile Law, 1 Fam.L.Q. 1, 28–31 (1966)) and has been ruled upon by a few state courts. Compare, Application of Billie, 103 Ariz. 16, 436 P.2d 130 (1968); State ex rel LaFollete v. Circuit Court, 37 Wis. 2d 329, 155 N.W.2d 141 (1967) (holding *Gault* retroactive on this issue); with State v. Hance, 2 Md.App. 162, 233 A.2d 326 (1967); Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874 (1967), cert. den. 392 U.S. 945, 88 S.Ct. 2296, 20 L. Ed.2d 1407 (1968) (denying retroactive effect). The general question of the retroactivity of constitutional decisions has not resulted in any clear rule to be applied in all cases. However, this area of the law need not be explored in much depth since the prime foundation of this section of *In re Gault,* Gideon v. Wainwright has been applied retroactively. The Supreme Court has applied retroactively those cases whose constitutional commands are central to the reliability of the fact-finding process at trial and without which innocent persons may have been adjudged guilty. See, *e. g.,* Roberts v. Russell, 392 U.S. 293, 88 S. Ct. 1921, 20 L.Ed.2d 1100 (1968) (holding retroactive Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (holding retroactive Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (holding retroactive White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d

908 (1964); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Since *In re Gault, supra,* extends the Sixth Amendment protections of *Gideon* to juveniles and since *Gideon* is retroactive, it seems clear that such part of *Gault* as relates to the right of counsel for juveniles should likewise be applied retroactively. In addition, Ohio Revised Code, 2151.35 reads in part:

> "The disposition of a child under the judgment rendered or any evidence given in the [juvenile] court shall not be admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation."

Under the provisions of this section, the juvenile convictions were inadmissible as evidence. Nor may these convictions be used to enhance punishment. See Greer v. Beto, 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526; Burgett v. Texas, *supra.*

■ The use by the prosecution of any prior convictions for whatever purpose is prejudicial and cannot be construed as harmless error. The State may not introduce any constitutionally infirm convictions wherever and whenever obtained. This error is of constitutional dimension; and the use of such a conviction, at a trial for a subsequent offense, for any purpose leading to a conviction for that subsequent offense is violative of the Fourteenth Amendment. The petitioner raises an additional issue for consideration, which shall herein be discussed.

The petitioner was in custody (jail) for 359 days prior to the time of his conviction and sentence. At the time of sentencing, a motion was made to the trial court to credit to the sentence imposed the amount of time the petitioner was in jail awaiting trial. The motion was denied. While there is no provision in Ohio law that one be credited with time spent in jail prior to trial, petitioner's allegations raise a substantial constitutional question. The cases cited by the defendant do not go to whether there is jurisdiction, in habeas corpus, over this issue. However, this Court has jurisdiction to hear the claim.

The petitioner contends such pretrial detention violates the Fourteenth Amendment because it denies equal protection of the law to those persons who cannot afford to obtain bail, and who must languish in custody (jail) between arrest and final disposition. The petitioner was then, and is today, an indigent. Bond was set in the amount of Five Thousand Dollars ($5,000.00). Because of the petitioner's indigency, he was unable to raise the bond and, therefore, remained in the Cuyahoga County Jail for a period of 359 days from the time of his arrest to the date of his commitment.

While bail was originally designed to thwart abuse of discretion and ensure pretrial protection for the class of defendants who were the concern of the reformers in the seventeenth and eighteenth centuries, bail is now sometimes used to defeat these same rights of indigents, who again represent a major interest in law reform. See Foote, The Coming Constitutional Crises in Bail, 113 U.Pa.L.Rev. 960, 999 (1965).

■ The setting of bail may not be used as a device for keeping persons in jail upon an indictment pending their trial. Rather, it is to enable a defendant to stay out of jail until he has been found guilty, while guaranteeing his presence at trial. Without this freedom, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence, and preparing any available defense. It is acknowledged that admission to bail involves a risk that the accused may flee the jurisdiction. However, the number of persons who flee is minimal compared to the number who appear when called. The practice of requiring a certain class of people to post money bail

not only assures that they will be present at trial, it also ensures that they will remain in pretrial custody (jail) pending their trial. This kind of discrimination was the sort to which the landmark case of *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), was directed. *Griffin* held that the due process and equal protection clauses of the Fourteenth Amendment required that all indigent defendants be furnished a transcript on appeal, at least where allegations that manifest errors occurred at the trial are not denied.

█ The Eighth Amendment provides that "Excessive bail shall not be required. . . . " These words should be given an interpretation consistent with *Griffin* and forbid any financial discrimination against the accused. This interpretation focuses on "the fundamental interest with which the amendment is concerned: The right not to be punished before conviction and the right not to be prejudiced in preparing for trial." Foote, *supra*, at 1181 (1965). See generally, LaFave, Alternatives to the Present Bail System, 1965 U.Ill.L.F. 8.

The rights of indigents have been the subject of recent opinions by the Supreme Court. In Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the Court held that a state may not constitutionally imprison beyond the maximum sentence imposed by statute a defendant who is unable to pay a fine. In Morris v. Schoonfield, 399 U.S. 508, 90 S.Ct. 2232, 26 L.Ed.2d 773 (1970), the four concurring judges stated:

"That the same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failure to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail

term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine." 399 U.S. at 509, 90 S.Ct. at 2233.

In Tate v. Short, 401 U.S. 395, 91 S. Ct. 668, 28 L.Ed.2d 130 (1971), decided last term, the Supreme Court held that a state may not limit punishment in a criminal case to the payment of fine if one is able to pay the fine and yet convert that fine into imprisonment where a person is unable to pay the fine.

█ The type of credit recommended by petitioner seems to be a logical extension of the holdings in these cases. The net effect of not crediting this petitioner with the time he spent in jail prior to trial results in the serving of a longer term in prison than he would have served had he been released on bail prior to trial. The failure to credit time spent in pretrial detention may lead to an anomalous result in certain situations. For example, if the petitioner were found guilty of robbery rather than armed robbery,[1] he would have been eligible for parole while still in jail pending trial. Failure to give him credit for pretrial detention could, at the other extreme, require that petitioner be incarcerated for 359 days longer than the maximum twenty-five years.

Since indigency is the sole reason why the petitioner was in jail, fundamental fairness seems to require this Court's intervention. This opinion in no way contemplates that the state may not jail a person accused of a crime prior to trial. That issue is not before the Court and many of the unfortunate practices of the bail system may be remedied by the adoption of proposed Rule 46 of the Ohio Rules of Criminal Procedure.[2]

---

1. The sentence for a conviction of robbery is one to twenty-five years, while the sentence for an armed robbery conviction is ten to twenty-five years. Ohio Revised Code 2901.12 and 2901.13. While these minimums and maximums provided by the Ohio Revised Code may seem to border on

madness to reasonable minds, nevertheless they exist.

2. (A) *Purpose of and right to bail.* The purpose of bail is to insure that the defendant appears at all stages of the criminal proceedings. All persons are entitled to bail except in capital cases where the

proof is evident or the presumption great.

(B) *Conditions of release.* Where summons has issued and the defendant has appeared the judge shall release the defendant on his own recognizance. (1) *Felony cases.* Any person who is entitled to release under subdivision (A), shall be released on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judge, unless the judge is convinced that such release will not assure the appearance of the person as required. Where a judge is so convinced he shall, either in lieu of or in addition to the preferred methods of release stated above, impose the first of the following conditions or release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions: (a) Place the person in the custody of a designated person or organization agreeing to supervise him; (b) Place restrictions on the travel, association, or place of abode of the person during the period of release; (c) Require the execution of an appearance bond in a specified amount and the deposit with the clerk of the court before which the proceeding is pending a sum of money equal to ten percent of the amount of the bond, but in no event shall such deposit be less than $25.00, ninety percent of the deposit to be returned upon the performance of the conditions of the appearance bond; (d) Require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof, or; (e) Impose any other constitutional condition deemed reasonably necessary to assure appearance.

Where conditions are imposed pursuant to subsection (B) (1) (d) or (e), the judge shall state in writing or on the record the factual basis for imposing these conditions in lieu of or in addition to those stated in subdivision (B).

(2) *Misdemeanor cases.* When a person has been arrested for a misdemeanor he shall be released by the clerk of court on his own recognizance unless the arresting officer objects in writing stating the grounds for the objection. Where the arresting officer so objects the defendant shall be eligible for release pursuant to a uniform bail schedule established by the court. If the defendant is unable to make bail under that schedule he shall be given an immediate hearing before a judge who shall determine the conditions of his release pursuant to subdivision (B) (1).

(C) *Release after conviction.* (1) *Felony cases.* Except when a person has been sentenced to death, a person who has been convicted and is either awaiting sentence or has filed a notice of appeal shall be treated in accordance with the provisions of subdivision (B) (1), unless the judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist the person may be ordered detained.

(2) *Misdemeanor cases.* A person who has been convicted of a misdemeanor and is either awaiting sentence or has filed a notice of appeal shall be treated in accordance with the provision of subdivision (B) (1).

(D) *Conditions of release; basis.*

In determining which conditions of release will reasonably assure appearance, the judge shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

(E) *Order.*

The judge authorizing the release of a person under this rule shall issue an appropriate order containing a statement of the conditions imposed.

(F) *Amendments.*

Subject to the provisions of subdivisions (B) and (E), a judge ordering the release of a person on any condition specified in this rule may at any time amend his order to imposed additional or different conditions of release.

(G) *Information need not be admissible.*

Information stated in, or offered in connection with, any order entered pursuant to this rule need not conform to the rules pertaining to the admissibility of evidence in a court of law.

(H) *Continuation of bonds.*

Unless application is made by the surety for discharge, the same bond shall continue as a matter of right until the final disposition of the case in the trial court. Final disposition shall mean the return of a verdict or judgment by a jury or by the court and the bond shall continue until the court or jury has made a finding on the issue of guilt or innocence. In the discretion of the trial court, and upon

This opinion also does not reach the issue of whether an indigent may commence a civil action against the state for damages for pretrial incarceration subsequent to exoneration of the charges against him. Ohio Revised Code, Section 2967.191 reads:

> The adult parole authority upon proper certification by the trial judge of time served, in the journal entry of sentence and upon recommendation of the trial judge may reduce the minimum sentence of a prisoner by the number of days the prisoner was confined at the county jail or workhouse or confined at a state facility for a presentence examination as provided in section 2947.25 of the Revised Code *after a verdict or plea of guilty and before commitment.*" (Emphasis supplied)

This section is unconstitutional on its face. In substance, it compels an indigent prisoner to be confined for a period longer than one who is released on bail between verdict or plea and commitment. The Equal Protection Clause requires that *all* time spent in any jail prior to trial and commitment by prisoners who were unable to make bail because of indigency *must* be credited to his sentence. The Fourteenth Amendment does not conscience discretion in such matters.

If this petitioner is re-tried, the 359 days already served and any additional pretrial detention time whenever served, upon prior certification, shall be deducted from his sentence.

The writ of habeas corpus shall issue. It is so ordered.

notice to the surety, the same bond may also continue after final disposition in the trial court and pending sentence or pending disposition of the case on review. Any provision of a bond or similar instrument which is contrary to this rule is void.

(I) *Sanctions.*

Whoever, having been released pursuant to this rule willfully fails to appear before any court as required, shall, subject to the provisions of this rule incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, suffer any penalty as provided by law.

(J) *Justification of sureties.*

Every surety, except a corporate surety which is licensed as provided by law, shall justify by affidavit and may be required to describe in the affidavit the property by which he proposed to justify and the encumbrances on it, the number and amount of other bonds and undertakings for bail entered into by him and remaining undischarged and all his other liabilities. He shall provide such other evidence of financial responsibility as the court or clerk may require. No bond shall be approved unless the surety or sureties appear, in the opinion of the court or clerk, to be financially responsible in at least the amount of the bond. No licensed attorney at law shall be a surety.

(K) *Forfeiture of bonds.*

If there is a breach of condition of a bond, the court shall declare a forfeiture of the bail. Forfeiture proceedings shall be as provided by law.

(L) *Exoneration.*

The obligor shall be exonerated as provided by law.