Paul Luna VASQUEZ,
Petitioner–Appellant,

v.

Thomas COOPER, et al.,
Respondents–Appellees.

No. 86–1076.

United States Court of Appeals,
Tenth Circuit.

Nov. 30, 1988.

Brian K. Holland (Michael G. Katz, Federal Public Defender, of Denver, Colo., with him on the briefs), Asst. Federal Public Defender, Denver, Colo., for petitioner-appellant.

John Milton Hutchins (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen., with him on the briefs), First Asst. Atty. Gen., Denver, Colo., for respondents-appellees.

Before LOGAN, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from the denial of a petition for writ of habeas corpus by the United States District Court for the District of Colorado. The issue on appeal is whether the fourteenth amendment requires that a state prisoner receive credit against his sentence for all presentence time spent in custody due solely to his inability to post bail, when the sentencing judge considers such presentence time in determining the sentence and the sentence given is within the statutory maximum. We affirm.

Vasquez was arrested on December 10, 1976. He was held for 284 days prior to trial and sentencing because he was unable to post bail. On September 22, 1977, a jury found Vasquez guilty of manslaughter. He was sentenced under Colorado's habitual criminal statute to a twenty-five- to forty-year term of imprisonment, a term well within the fifty-year maximum allowable by law. *See* Colo.Rev.Stat. § 16–13–101 (1986). The sentencing judge stated in the judgment that "consideration was given for the time the defendant was incarcerated pending sentencing on the present charges" and that "[t]he court does not credit the defendant with any time previously served."

Vasquez contends that his sentence is unconstitutional because the judge refused to credit his sentence for the time he spent in custody prior to sentencing. He alleges that the refusal of credit caused him to spend more time in prison than would a wealthier person who could have posted bail, and that a disparate sentence was therefore imposed on him in violation of the equal protection clause of the fourteenth amendment. We disagree.

As outlined by the Supreme Court, "we generally analyze the fairness of relations between the criminal defendant and the State under the Due Process Clause, while we approach the question whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants under the Equal Protection Clause." *Bearden v. Georgia,* 461 U.S. 660, 665, 103 S.Ct. 2064, 2068, 76 L.Ed.2d 221 (1983). Because equal protection and due process interests may be implicated here, we analyze Vasquez' claims under both the equal protection and due process clauses of the fourteenth amendment.

## I. Equal Protection

Unless it provokes strict judicial scrutiny, a state practice that distinguishes

among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Schools,* — U.S. —, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). A state practice will not require strict judicial scrutiny unless it interferes with a "fundamental right" or discriminates against a "suspect class" of individuals. *Id.* We conclude that Vasquez has failed to show that he is a member of a suspect class, or that he was denied a fundamental right. Thus, strict scrutiny is not required. In order for Vasquez to prevail on an equal protection theory, he therefore must show that he is a member of a class that was denied a benefit available to other similarly situated individuals, and that such a denial is not rationally related to legitimate state interests. Vasquez fails to do so.

■ We begin with a careful restatement of our understanding of Vasquez' equal protection claim. Vasquez claims that he is a member of a class of persons who were denied the benefit of release on bail prior to trial. This denial of liberty through release on bail, he claims, was on account of indigence, because a wealthier person could have posted bail and obtained release from custody prior to conviction and sentencing. Vasquez attempts to extend to the sentencing phase his claim of denial of liberty based upon indigence. He claims that the denial of "credit" at the sentencing phase automatically causes him to spend a longer time in custody than a wealthier person who could obtain pretrial release on bail. He therefore concludes that he was deprived of liberty solely on account of indigence in violation of the equal protection clause of the fourteenth amendment.

Vasquez' equal protection theory is flawed in two significant respects. First, Vasquez attempts to equate indigence with membership in the class of persons who remain in pretrial confinement because

they could not post bail. As a theoretical matter, one need not be indigent to be unable to post bail. The judge setting bail considers each defendant individually to determine the level of bail deemed necessary to satisfy the state's regulatory interest in ensuring a defendant's presence at trial. A person could have considerable assets, and yet be unable to post the level of bail that a judge has determined necessary to prevent flight. Although Vasquez could claim that indigents who were denied credit for pretrial confinement were treated disparately at sentencing from nonindigents, we find no basis in this record for such a distinction. The proper definition of the affected class in this case is persons who were subject to pretrial confinement because they could not post bail, and who were denied credit against their sentence for such pretrial confinement. Vasquez has not shown that as a member of this class he was denied credit and thereby served a longer sentence solely due to indigence, because nonindigents subject to pretrial confinement are theoretically also members of this class.

Even if we assume *arguendo* that the operation of bail requirements discriminate *in effect* against indigents, *see Williams v. Illinois,* 399 U.S. 235, 242, 90 S.Ct. 2018, 2022, 26 L.Ed.2d 586 (1970), and that Vasquez could not post bail due to his indigence,[1] thereby making him a member of a class of *indigent* persons who were held in pretrial confinement because they could not post bail, Vasquez' theory is flawed for a second reason: Vasquez has not shown that he was denied a benefit due to his impecunity. He fails to meet the test articulated by the Supreme Court for determining whether a classification based on wealth violates the equal protection clause:

The individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were com-

---

1. The Attorney General argues that the evidence does not support the assertion that Vasquez could not post bail solely due to his indigence. We need not decide that question. Assuming, *arguendo,* that Vasquez' inability to post bail was due to his indigence, we still hold that the sentence imposed satisfied the requirements of the fourteenth amendment.

pletely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit. *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 20, 93 S.Ct. 1278, 1289, 36 L.Ed.2d 16 (1973).[2]

Regardless of whether the standard of review is rational basis or strict scrutiny, Vasquez has failed to show that the sentencing judge invidiously denied any benefit that was available to others solely because he was indigent, or because he was a member of the putative class of persons who were subject to pretrial confinement. Any discrimination by denial of the benefit of *bail* does not necessarily extend to the *sentencing* phase in which the judge considers anew the background of each individual, including whether he was held in pretrial confinement, in light of the penological interests of the state.

The sentencing judge's action here, considering the presentence time served and denying credit, did not amount to an impermissible classification denying Vasquez of his liberty interest. By considering the time Vasquez spent in jail in determining the length of sentence, the judge effectively put Vasquez in the same position as those who were released on bail—the total time during which liberty would be deprived in both cases is specifically con-sidered by the judge. Requiring the judge to determine the sentence necessary to serve the state's penological interests by disregarding the time previously served by the defendant, and then mechanically subtracting that time from the sentence given, would be an artificial and meaningless exercise.[3] By considering the presentence time the judge actually equalizes the defendants' treatment. Therefore, Vasquez has not shown that he was subjected to a longer prison sentence than a wealthier person punished for the same crime. There is no differential treatment for purposes of the equal protection clause.

Vasquez mistakenly relies upon several Supreme Court cases to support his equal protection claim: *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (indigent's probation revoked because of inability to pay fine); *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (statute provides only for fines; indigent unable to pay traffic fines and imprisoned); and *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed. 2d 586 (1970) (indigent failing to satisfy monetary provisions of sentence confined beyond maximum term specified by statute). Taken together, *Tate* and *Williams* "stand for the proposition that no person may be incarcerated, upon conviction of a crime, for a period longer than the maxi-

---

**2.** In the criminal context the Court has to a limited extent struck down rules that effectively barred indigent litigants from access to the judicial process. For example, the Court has held that an indigent defendant is entitled to counsel on first direct appeal, *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), but has no constitutional right to counsel on a discretionary appeal, *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Further, the Court struck down a state practice of granting appellate review only to those able to afford a trial transcript, *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (plurality opinion), but upheld a federal statute that instructed the district court to provide a free trial transcript only if the court certifies that the challenge is not frivolous and that the transcript is necessary to the petition, *United States v. MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed. 2d 666 (1986) (plurality opinion). Yet even here, the Court has declined to subject the wealth classifications to strict scrutiny.

**3.** We recognize that several other circuits hold that an indigent unable to post bail is entitled under the equal protection clause to credit against the maximum sentence for the time spent in presentence confinement. *See Johnson v. Riveland,* 855 F.2d 1477, 1483 n. 7 (10th Cir.1988) (citing numerous cases). Some circuits hold that there is a constitutional right to credit even when the total time is below the maximum penalty for the offense. *Id.* Other concerns may be implicated when the total period of confinement exceeds the statutory maximum, but that is not the case here. We fail to see any benefit accorded indigent prisoners by requiring the judge to set a higher sentence and then reduce it for time spent in pretrial confinement, rather than permitting the judge to consider time spent in presentence confinement in ordering an initial sentence. To say that only the former accords "credit" to the prisoner places an undue emphasis on semantics rather than on the actual interests of the prisoner and the penological interests of the state.

mum sentence set by statute solely on the basis of his or her inability to pay a criminal fine." *Doyle v. Elsea,* 658 F.2d 512, 518 (7th Cir.1981); *see Bearden,* 461 U.S. at 667–68, 103 S.Ct. at 2069–70. *Bearden* only requires that once the state has determined that its penological interests do not require imprisonment, it cannot revoke probation and require imprisonment without first considering alternative measures of punishment when the probationer, through no fault of his own, cannot pay a fine.

These cases are narrowly drawn, in part, to promote the policy that the sentencing judge must be afforded broad discretion in determining the appropriate sentence for a convicted defendant. *Tate* and *Williams* are expressly limited to situations in which an indigent would be imprisoned beyond the time the legislature deemed necessary to serve the state's penological interests. In those cases, the Court recognized the necessity that the trial court exercise broad discretion in determining appropriate punishment. For example, in *Williams* the Court emphasized the importance of the sentencing judge taking into account a wide range of factors and stated that "nothing we now hold precludes a judge, from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law." *Williams,* 399 U.S. at 243, 90 S.Ct. at 2923. In *Bearden* the Court again took the opportunity to stress the necessity of the sentencing judge's broad exercise of discretion.

> The State, of course, has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws. A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources.

*Bearden,* 461 U.S. at 669–70, 103 S.Ct. at 2071.

We conclude that Vasquez' inability to post bail did not cause him to serve a longer sentence or be treated unequally in violation of the equal protection clause of the fourteenth amendment. The sentencing judge considered his pretrial confinement in imposing sentence, and the total time to be spent in confinement does not exceed the maximum term defined by statute.

## II. Due Process

The Supreme Court has recognized that "[d]ue process and equal protection principles converge" in cases involving indigent criminal defendants. *Bearden,* 461 U.S. at 665, 103 S.Ct. at 2068.

> Whether analyzed in terms of equal protection or due process, the issue cannot be resolved by resort to easy slogans or pigeonhole analysis, but rather requires a careful inquiry into such factors as "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose...."

*Id.* at 666–67, 103 S.Ct. at 2069 (quoting *Williams v. Illinois,* 399 U.S. at 260, 90 S.Ct. at 2031 (Harlan, J., concurring)). In our view Vasquez' claim of disparate treatment based on indigence in the sentencing phase is best analyzed under the due process clause. As the Supreme Court noted:

> A due process approach has the advantage in this context of directly confronting the intertwined question of the role that the defendant's financial background can play in determining an appropriate sentence. When the court is initially considering what sentence to impose, a defendant's level of financial resources is a point on a spectrum rather than a classification. Since indigency in this context is a relative term rather than a classification, fitting "the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished," *North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969). The more appropriate question is whether consideration of a defendant's financial background in setting or resetting a

sentence is so arbitrary or unfair as to be a denial of due process.

*Bearden,* 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8.

 Under a procedural due process analysis, we must consider whether the state has impermissibly affected an individual right or has done so in an arbitrary fashion. Government conduct depriving a person of life, liberty, or property must be implemented in a fair manner. *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). Clearly Vasquez' liberty interest is implicated in the sentencing determination. Generally, however, appellate review of a sentence ends once it is determined that the sentence is within the limitations set by statute.[4] *Dorszynski v. United States,* 418 U.S. 424, 440–41, 94 S.Ct. 3042, 3051–52, 41 L.Ed.2d 855 (1974); *United States v. Brown,* 784 F.2d 1033, 1039–40 (10th Cir.1986); *United States v. O'Driscoll,* 761 F.2d 589, 597 (10th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). The legislature defines the limit of the state's penological interest when it establishes maximum sentences. Although incarceration beyond that time may implicate constitutional concerns, the period of incarceration within that time is necessarily discretionary with the sentencing judge. Vasquez has no right to a particular sentence within the statutory limits. The due process analysis in this case, therefore, turns on whether the process of imposing the sentence was fundamentally fair.

The trial judge in this case fairly exercised his discretion within the statutory and constitutional mandates. The state, by statute, defined its interest in punishing habitual criminal offenders and established the maximum sentence. The judge applied the statute in setting Vasquez' sentence. In the sentencing order the judge specifi-

cally stated "[t]hat consideration was given for time the defendant was incarcerated pending sentencing on the present charges." The judge then explicitly denied credit for the time previously served and sentenced Vasquez to a term within the statutory limitations. As a convicted felon, Vasquez had no more expansive procedural interest.

 Awarding "credit" for presentencing jail time is, by its nature, a reduction of the given sentence. The decision whether to reduce a sentence is discretionary with the trial judge. *United States v. Long,* 524 F.2d 660, 662 (9th Cir.1975). Here, the decision not to reduce Vasquez' sentence for time served in light of all the circumstances reviewed by the trial judge was, in effect, a part of Vasquez' sentence. The sentence in this case was not an arbitrary denial of Vasquez' interests.

This is not a case in which a person is denied his freedom simply because of an inability to pay a fine; nor is this a case in which the sentencing judge did not even consider the fact that the convicted person spent time in custody prior to sentencing. Rather, after considering the time Vasquez spent incarcerated prior to sentencing, the judge determined the sentence necessary to serve the state's interests.

We hold that Vasquez is not entitled to apply the time he spent in presentence custody as credit against his sentence of imprisonment when the trial judge took such presentence incarceration time into consideration in ordering the sentence and Vasquez' total incarceration time is within the statutory limitation set for his offense.

The district court's order dismissing the petition for a writ of habeas corpus is therefore AFFIRMED.

LOGAN, Circuit Judge, dissenting:

I respectfully dissent.

---

4. This is particularly true regarding substantive review of a trial court's sentencing decision. The appellate courts have been somewhat more willing to review the procedural aspects of the sentencing decision. *See, e.g., North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (requiring a sentencing judge who imposes a harsher sentence upon retrial to give reasons for the increase); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (review of sentencing decision granted when trial judge relied on material misinformation); *United States v. Maples,* 501 F.2d 985 (4th Cir. 1974) (review of sentencing decision when impermissible criterion of sex was used).

This case presents one narrow question: whether the Fourteenth Amendment requires a state court to give credit against the sentence of an indigent prisoner, who received less than the statutory maximum prison term, for the preconviction time that the prisoner served in jail because of his inability to post bail. I would hold that it does.

In *Williams v. Illinois*, 399 U.S. 235, 236, 90 S.Ct. 2018, 2019, 26 L.Ed.2d 586 (1970), the Supreme Court held that the Equal Protection Clause prohibits a state from incarcerating a defendant for longer than the statutory maximum prison term because of his inability to pay the fine component of his sentence. Unlike the majority in the case at bar, the Supreme Court in *Williams* did not discuss whether the defendant belonged to a suspect class or whether the imprisonment infringed on a fundamental right. The *Williams* court simply held that when an indigent prisoner would end up serving a prison term longer than the statutory maximum, converting a fine into imprisonment works an "invidious discrimination":

> "By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment."

*Id.* at 242, 90 S.Ct. at 2023 (footnote omitted).

The following year, the Supreme Court, in *Tate v. Short*, 401 U.S. 395, 399, 91 S.Ct. 668, 671, 28 L.Ed.2d 130 (1971), held that a court could not subject a defendant to imprisonment for inability to pay a fine when the statute provided that a fine was the only possible punishment for those defendants able to pay. The Court held that this practice constituted the same invidious discrimination as the practice in *Williams*, because the defendant "was subjected to imprisonment solely because of his indigency." *Id.* at 397–98, 91 S.Ct. at 670. The *Tate* court stated its holding in terms broad enough to uphold petitioner's assertion in the instant case:

> " '[T]he same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and *whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine.* In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' "

*Id.* at 398, 91 S.Ct. at 671 (quoting *Morris v. Schoonfield*, 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970) (White, J., concurring)) (emphasis added); *see also Bearden v. Georgia*, 461 U.S. 660, 667, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983) (repeating "whether or not" language quoted in *Tate*, in case involving revocation of parole for inability to pay fine and restitution). The essence of the holdings in *Williams*, *Tate*, and *Bearden*, therefore, does not rest on the notion that a prisoner suffers a constitutional violation only if his total time in prison exceeds the statutory maximum punishment for a crime, as the majority would have it.

The courts have had little difficulty converting the *Williams* and *Tate* holdings to the bail context. Several circuits have held that indigents must be credited for preconviction prison time if the total time they would serve would exceed the statutory maximum. *See, e.g., Crowden v. Bowen*, 734 F.2d 641, 642 (11th Cir.1984); *Matthews v. Dees*, 579 F.2d 929, 931 (5th Cir. 1978); *Hook v. Arizona*, 496 F.2d 1172, 1174 (9th Cir.1974). Apparently the majority in the instant case would agree that *Williams* and *Tate* mandate such a result. *See ante*, at 253–54. The majority, however, would ignore the dictum in *Tate*, *see* 401 U.S. at 398, 91 S.Ct. at 670, and confine the rule to cases involving the statutory maximum punishment.

The majority recognizes, in a footnote, that we are not the first court to address the precise issue presented in this case. *See ante*, at 253 n. 3. Of the federal cases, only the Fifth Circuit, over a strong dissent by Judge Godbold, has found no federal constitutional right to credit for time served prior to sentence in a case in which the maximum term was not given. *Jackson v. Alabama*, 530 F.2d 1231, 1235, 1237 (5th Cir.1976); *id.* at 1241–45 (Godbold, J. dissenting). More persuasive, I believe, are the opinions holding, as I would, that an indigent defendant is entitled to credit for his preconviction confinement even when he is sentenced to less than the statutory maximum term. In *King v. Wyrick*, 516 F.2d 321, 323 (8th Cir.1975), the Eighth Circuit recognized that

> "equal protection considerations obtain as well in the case of an indigent prisoner who is denied jail time credit on a prison term less than the allowable maximum prescribed by statute. He still must serve a longer term in connection with the offense than would a wealthier prisoner who is sentenced to the same term but who is able to meet bail to avoid incarceration before trial and sentencing."

*Accord Ham v. North Carolina*, 471 F.2d 406, 407, 408 (4th Cir.1973); *Johnson v. Riveland*, 620 F.Supp. 1425, 1426 (D.Colo. 1985), *vacated on other grounds*, 855 F.2d 1477 (10th Cir.1988); *Godbold v. Wilson*, 518 F.Supp. 1265, 1268–69 (D.Colo.1981); *Durkin v. Davis*, 390 F.Supp. 249, 253–54 (E.D.Va.1975), *dismissed on other grounds*, 538 F.2d 1037 (4th Cir.1976); *Mohr v. Jordan*, 370 F.Supp. 1149, 1152–54 (D.Md.1974); *see also Vickers v. Haynes*, 539 F.2d 1005, 1006 (4th Cir.1976); *United States v. Gaines*, 449 F.2d 143, 144 (2d Cir.1971); *Monsour v. Gray*, 375 F.Supp. 786, 788 (E.D.Wis.1973); *White v. Gilligan*, 351 F.Supp. 1012, 1014 (S.D.Ohio 1972) (3-judge court); *Workman v. Cardwell*, 338 F.Supp. 893, 899 (N.D.Ohio), *vacated*, 471

F.2d 909, 911 (6th Cir.1972), *certs. denied*, 412 U.S. 932, 93 S.Ct. 2748 & 2762, 37 L.Ed.2d 161 (1973). In a similar case, the Seventh Circuit has held: "To 'consider' the presentence custody ... but leave the sentence unchanged, as the sentencing judge did here, was tantamount to increasing the sentence in violation of [the defendant's] equal-protection rights." *Johnson v. Prast*, 548 F.2d 699, 703 (7th Cir.1977).

Once the correct rule of law from *Williams* and *Tate* is applied, the question presented by this case is not a difficult one. Although recognizing that petitioner had served 284 days in jail before conviction because of his inability to post bail, the sentencing judge expressly refused to credit petitioner for his time served. Converting the Supreme Court's statement in *Tate* to the bail context: " '[T]he same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make [bail] ... whether or not the jail term of the indigent extends beyond the maximum term that may be imposed....' " *Tate*, 401 U.S. at 398, 91 S.Ct. at 670 (quoting *Morris*, 399 U.S. at 509, 90 S.Ct. at 2233 (White, J., concurring)). Therefore, petitioner is entitled to a credit for the jail time he served before his conviction, even though the court sentenced him to a lesser prison term than the statutory maximum.

The question in this case is not whether a defendant always has a constitutional "right" to have preconviction time credited against the eventual sentence. Rather, the question is whether an indigent defendant suffers invidious discrimination in violation of the Equal Protection Clause when the court expressly refuses to credit preconviction incarceration time, even though a wealthier defendant could have posted bail and thus would serve less time in prison, for the same offense, than the indigent defendant. A fair interpretation of the Supreme Court's words in *Williams*, *Tate*, and *Bearden* requires holding that denial of such credit violates the Equal Protection Clause.[1]

---

1. I realize that cases may exist in which bail is set so high that even wealthy persons cannot meet it. Such cases may not be as amenable to

equal protection analysis because the presence of a class subject to invidious discrimination is not as clear—that is, a class is not being denied

Even under the majority's test for determining when a wealth-based classification violates an indigent defendant's equal protection rights, *see ante,* at 252, I would find a violation. It seems to me that petitioner has proved exactly what he must—that he was financially unable to post the bail required for his preconviction freedom (the desired benefit) and as a result was absolutely deprived of the ability to enjoy that desired benefit.

The majority takes solace in the sentencing judge's statement, made when imposing sentence, that he had considered petitioner's preconviction incarceration. *See ante,* at 253, 254, 255. But the majority misconstrues the judge's words, and by ignoring half of what he said, makes it appear as if the judge did something he expressly did not do. As the majority correctly notes, the judge said, "consideration was given for the time the defendant was incarcerated pending sentence on the present charges." *See ante,* at 251. But he also stated, "The court does not credit the defendant with any time previously served." *Id.* To me, these statements mean that although the sentencing judge recognized that petitioner had served 284 days in jail before his conviction, the judge declined to credit this time against the sentence he had decided was appropriate.

The majority, however, seems to hold that even though the judge expressly stated that he did not credit petitioner for time served, he probably did so anyway, because he sentenced petitioner to less than the statutory maximum: "By considering the time Vasquez spent in jail in determining the length of sentence, the judge effectively put Vasquez in the same position as those who were released on bail.... By considering the presentence time the judge

actually equalizes the [indigent and wealthy] defendants' treatment." *Ante,* at 253. Unless we are to disregard the sentencing judge's plain statement that he did not credit petitioner for the preconviction time served, I do not see how the majority can come to the conclusion that it does. As another circuit court has stated, "it strains logic to suggest that the sentencing judge, who unequivocally stated he was not allowing jail time credit, would in the very same sentencing proceeding contradict himself and in effect grant such credit by supposedly taking into account petitioner's jail time...." *King,* 516 F.2d at 325.

The majority opinion appears to be adopting a conclusive presumption that so long as the sentence is less than the statutory maximum, a reviewing court must presume that the judge credited a defendant for preconviction time served. *See Stapf v. United States,* 367 F.2d 326, 330 (D.C.Cir. 1966). Of course, the judge's statement that he was not crediting petitioner for time served clearly would rebut any presumption that might be applied, except for a "conclusive" unrebuttable presumption. *See Faye v. Gray,* 541 F.2d 665, 668–69 (7th Cir.1976); *King,* 516 F.2d at 324. I have problems with any presumption at all because of the different fact situations that can be imagined and are certain to show up in cases at some future time. I would, therefore, join the Seventh Circuit in holding that there is no presumption, conclusive or rebuttable, in this area. *See Johnson,* 548 F.2d at 703.

I recognize that the credit demanded by my interpretation of the Equal Protection Clause can easily be circumvented by sentencing judges who intend to sentence a defendant to less than the statutory maximum period of incarceration. For instance,

rights simply because of financial impoverishment. Without deciding whether such persons constitute a subject class protected under equal protection or due process analysis, and thus have a constitutional right to credit for time served, I believe a principled basis exists for distinguishing, in the bail context, between the truly indigent and persons of greater means. In posting bail for wealthier people judges can set bail at a level the detainee can meet, but which provides a strong incentive to return for trial.

The judge does not have this option with poor people, because if bail is set at an affordable level (e.g., $1), a sufficient incentive to return is not created. Thus, for nearly any bail the truly indigent may remain in prison simply because he does not have anything to post as collateral. Therefore, the system of bail may work a much greater hardship on indigents and the recognition of an "invidious class" is appropriate in that context.

suppose the indigent defendant has been incarcerated one year for failure to make bail before conviction, the statutory maximum sentence is ten years, and the sentencing judge determines that the state's penological interests would be satisfied by a prison term of five years; the judge could simply announce a six-year sentence and credit the one year served, thereby circumventing the indigent defendant's equal protection rights. Even so, I agree with Judge Kane of the United States District Court for the District of Colorado "that it is still mandatory that the sentencing judge explicitly credit such a defendant for presentence confinement. Otherwise, there is a serious danger that the constitutional right will become completely illusory." *Godbold,* 518 F.Supp. at 1269 (footnote omitted).

Defendants unable to post the bail that a judge believes necessary to ensure a defendant's presence at trial may be jailed while awaiting trial, of course. But this hardly compels the conclusion that such a defendant is not entitled to have that time credited against the eventual sentence imposed, even when that sentence is less than the statutory maximum. The majority is mistaken, I believe, in limiting the equal protection rights expressed in *Williams* and *Tate* to cases in which the indigent defendant would otherwise serve a prison term greater than the statutory maximum. Even under the rational basis analysis that the majority feels compelled to apply, I would find that *no* state interest is served by imprisoning indigent defendants longer than wealthier ones. *See Jackson,* 530 F.2d at 1242–44 (Godbold, J., dissenting).

My conclusions employing equal protection analysis are equally applicable to due process analysis. As the Supreme Court has noted, when considering the criminal justice system's treatment of indigents, equal protection analysis and the fundamental fairness question under due process are "substantially similar." *Bearden,* 461 U.S. at 666, 103 S.Ct. at 2069.

Therefore, I dissent.

