**Brent L. DOCK, Plaintiff-Appellant,**

v.

**George LATIMER, Associate Member, Division of Corrections, Defendant-Appellee,**

**State of Utah/Board of Pardons, William V. Milliken, Director, Defendants.**

No. 82–2558.

United States Court of Appeals, Tenth Circuit.

March 23, 1984.

Robert B. Sykes, Salt Lake City, Utah (Bruce J. Udall, Salt Lake City, Utah, with him on the brief), for plaintiff-appellant.

Douglas C. Richards, Asst. Atty. Gen., Salt Lake City, Utah (David L. Wilkinson, Atty. Gen., Salt Lake City, Utah, with him on the brief), of the State of Utah, for defendants-appellees.

Before BARRETT and LOGAN, Circuit Judges, and CHILSON [*], District Judge.

CHILSON, Senior District Judge.

We refer to the appellant as "Dock" or "plaintiff" and to the appellee as "Latimer" or "defendant".

In December 1979, the plaintiff, an inmate of the Utah State Prison, filed this action in the Federal District Court in Utah, pursuant to 42 U.S.C. § 1983 (1976), seeking to recover damages from the Utah State Board of Pardons, George W. Latimer, the Chairman of the Board and William

---

[*] Hatfield Chilson, Senior Judge, United States District Court for the District of Colorado, sitting by designation.

V. Milliken, the Director of Division of Corrections.

The basis of the claim is that the defendants violated his Federal Constitutional rights to due process of law in failing to comply with the Utah Parole Statute and Regulations in considering his eligibility for parole.

The defendants filed a motion to dismiss which was granted by the trial court which held that Latimer had absolute immunity for the acts alleged in the complaint and entered judgment of dismissal of the complaint with prejudice.

Dock appealed only the judgment of dismissal of his claim against Latimer.

## STATEMENT OF FACTS

In February 1974, Dock was committed to the Utah State Prison to serve a sentence of one to fifteen years upon his plea of guilty to a charge of assault.

On August 28, 1974, Dock appeared before the Board for his initial parole hearing. The Board did not fix a parole date and set his next hearing for August 1975.

In April 1975, Dock was transferred to a medical facility in Vacaville, California, for psychiatric treatment and evaluation and was not returned to Utah until October 1975.

He was therefore in Vacaville, California, at the time of his scheduled August 1975 hearing. The staff at the prison therefore forwarded to plaintiff a typed request for "postponement" of that August 1975 hearing. On or about July 29, 1975, the plaintiff returned to the Board the form which read:

I agree to postpone my hearing before the Utah Board of Pardons until sufficient information is received concerning my progress. I do this to permit the Board more time and material to consider my case.

The Board subsequently received a second letter from plaintiff prior to the August 26, 1975 hearing, expressing his concern that his next hearing date not be indefinite, and asking that it be scheduled for "six months to one year or in the near future".

On August 26, 1975, the Board met and set the next hearing date for August 1980.

On September 17, 1975, Dock wrote the Board denying he had waived his appearance at the August 1975 hearing and stating that he understood the hearing was to be continued for a reasonable length of time and requesting the Board to reconsider and reduce the "stiffness of the date." The Board took no action on the request.

On August 6, 1980, the Board met with Dock present and set Dock's parole date as February 10, 1981.

In December 1979, Dock commenced this action.

## UTAH PAROLE STATUTE AND REGULATIONS

The Utah legislature had enacted a statute on pardons and paroles (Utah Code Annotated, Chapter 62). The Utah Parole Statute created a State Board of Pardons, the duties of which were to consider the propriety of parole and pardon, and prescribed certain procedures for carrying out their duties.

Section 77–62–9 provides in pertinent parts:

The board of pardons may permit any prisoner who is now or may hereafter be imprisoned in the Utah State Prison, or any county jail, to go on parole .... In the case of all prisoners said board shall determine, within six months after the date of their commitment to prison, the date upon which they shall be *eligible for consideration for parole;* and all prisoners shall be promptly informed of the board's decision. (Emphasis added).

Section 77–62–14 provides in pertinent parts:

*Before reaching a final decision to release any prisoner on parole* the board of pardons shall cause the prisoner to appear before it and shall personally interview him to consider his ultimate fitness for parole and verify, as far as

possible, the information furnished it from other sources. The board of pardons shall reach its own conclusions as to the desirability of releasing the prisoner on parole and *no release on parole shall be effected except by a majority vote of the entire board,* nor unless said board is reasonably satisfied that the prisoner has a suitable community parole plan with visible means of support, or is likely to be suitably employed in self-sustaining employment upon his release. The prisoner, after any appearance before the board of pardons shall be promptly notified by said board of its decision in his case. (Emphasis added).

The Board of Pardons adopted certain rules and regulations which provided among other things that:

All persons, for or against the applicant, that so desire may be heard in respect thereto, and the prisoner or parolee shall personally appear on his own behalf . . . . In considering an applicant for release, the Board shall cause to be gathered and brought before it all information regarding the prisoner required by law to be considered, which information, if possible, shall be properly verified. . . . the Board shall personally interview the prisoner. . . .

Board of Pardons of the State of Utah Rules and Regulations, Chp. IV, § 2 (1952 as amended in 1969).

### PLAINTIFF'S CLAIMS

Dock asserts that Latimer failed to follow Utah law in the following respects:

1. That he did not permit the plaintiff to be present at the August 1975 hearing;

2. That he failed to gather information on behalf of the plaintiff;

3. That he failed to allow the plaintiff to present evidence at the parole hearing;

4. That he failed to properly calendar plaintiff for a rehearing or a redetermination upon plaintiff's application. (Plaintiff's Brief p. 5)

Dock claims these alleged violations of the Utah Parole Statute and Regulations constitute a violation of his rights to due process of law in violation of the Federal Constitution and that plaintiff is thereby entitled to relief pursuant to 42 U.S.C. § 1983 (1976).

### ISSUE FOR DETERMINATION

Since this matter is before us on defendants' motion to dismiss, we assume without deciding, that the Board failed to comply with the Utah Parole Statute and Regulations in the respects set forth in plaintiff's brief.

The issue in this case is whether or not under the applicable law, does the alleged failure of Latimer as chairman and a member of the Board of Pardons to follow the procedures set forth in the Utah Statute and Regulations constitute a violation of Dock's rights to due process of law under the Federal Constitution. If so, Dock may be entitled to relief under 42 U.S.C. § 1983 (1976) and the dismissal should be reversed and the case remanded for trial. If not, the dismissal should be affirmed.

### DISCUSSION

The Supreme Court's decision in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), is dispositive of the question before us.

The *Greenholtz* decision in pertinent parts states:

"We granted certiorari to decide whether the Due Process Clause of the Fourteenth Amendment applies to discretionary parole-release determinations made by the Nebraska Board of Parole, and, if so, whether the procedures the Board currently provides meet constitutional requirements." *Id.* at 3, 99 S.Ct. at 2102.

The Court stated at page 7, 99 S.Ct. at page 2103 of the opinion:

The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we have inquired into the nature of the individual's claimed interest.

"[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents v. Roth,* 408 U.S. 564, 570–571 [92 S.Ct. 2701, 2705–2706, 33 L.Ed.2d 548] (1972).

This has meant that to obtain a protectible right

"a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577 [92 S.Ct. at 2709].

There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano,* 427 U.S. 215, 224, [96 S.Ct. 2532, 2538, 49 L.Ed.2d 451] (1976).

Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. See *Id.,* at 225 [96 S.Ct., at 2538]; *Montanye v. Haymes,* 427 U.S. 236 [96 S.Ct. 2543, 49 L.Ed.2d 466] (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 [97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236] (1976). This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release.

A state may, as Nebraska has, establish a parole system, but it has no duty to do so.

The Court, 442 U.S. at page 11, 99 S.Ct. at page 2105, concluded:

That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained. *Board of Regents v. Roth,* 408 U.S. at 577 [92 S.Ct. at 2709]. To that extent the general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process. *Meachum v. Fano,* 427 U.S., at 225 [96 S.Ct. at 2538]; *Montanye v. Haymes,* supra.

The Court also stated at page 11, 99 S.Ct. at page 2105 that:

Respondents' second argument is that the Nebraska statutory language itself creates a protectible expectation of parole. They rely on the section which provides in part:

"Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

"(a) There is a substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would .have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb.Rev.Stat. § 83–1,-114(1) (1976).

With respect to this contention, the Court stated: "We can accept respondents' view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection." *Id.* at 12, 99 S.Ct. at 2106.

The Utah Parole Statute does not contain any such "shall unless" provision and the Court's discussion of that provision of the Nebraska statute is not here pertinent other than to note that the Supreme Court

stated at page 16, 99 S.Ct. at page 2108: "The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more."

The Tenth Circuit has applied the *Greenholtz* decision in three cases.

In *Shirley v. Chestnut*, 603 F.2d 805 (10th Cir.1979), the plaintiff, Shirley, sought a declaration that the Due Process Clause of the Fourteenth Amendment requires published criteria for parole release, access to adverse material in inmate files, right to subpoena witnesses at the hearing, and written reasons for the denial of parole. The District Court denied relief. Upon appeal this Court stated:

> We have carefully considered the Oklahoma statutes and other information concerning parole procedures provided in the record. We hold that the Oklahoma statutory scheme outlined above does no more than create a parole system, which in the Supreme Court's view as expressed in Greenholtz does not establish a liberty interest. In the absence of such liberty interest, the specific due process procedures requested by the appellants are not applicable. Accordingly, the district court's conclusion in the case is affirmed.

*Id.* at 807.

In *Schuemann v. Colorado State Board of Adult Parole*, 624 F.2d 172 (10th Cir. 1980), this Court considered Schuemann's appeal from the Federal District Court's denial of his petition for writ of habeas corpus to review his denial of parole by the Colorado State Board of Adult Parole.

On appeal, this Court held:

> Schuemann next challenges the lack of certain procedural protections, including access to parole files and appeal of right. A similar challenge was denied in *Shirley v. Chestnut*, 603 F.2d 805 (10th Cir. 1979), where this court held that access to parole files and other procedural rights are not constitutionally required under a parole statute which does not create a liberty interest. Like the Oklahoma statute considered in Shirley, the Colorado parole statute gives the Board broad discretion and does not require the granting of parole upon a showing of any particular facts. See Colo.Rev.Stat. § 17-2-201(3)(b) (1978). Cf. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. at 11–12, 99 S.Ct. at 2106.

*Id.* at 175.

This Court found no merit in Schuemann's claims and affirmed the trial court's dismissal of the action.

In *Candelaria v. Griffin*, 641 F.2d 868 (10th Cir.1981), this Court considered an appeal by the plaintiff, Candelaria, from the trial court's dismissal of the plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 (1976), which charged certain prison officials with violating his civil rights while he was confined as a prisoner at New Mexico State Penitentiary.

On appeal, this Court, citing the decision in *Greenholtz*, affirmed the dismissal of the plaintiff's claims that the denial of his parole was a violation of his right to due process under the Federal Constitution, but reversed and remanded the trial court's dismissal of a racial discrimination claim made by the plaintiff. *Id.* at 870.

## CONCLUSION

We note that the trial court dismissed the action on the ground that Latimer had absolute immunity.

We do not reach the question of immunity in this case for the reasons set forth in *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980):

> We ... conclude that it is not necessary for us to decide any question concerning the immunity of state parole officials as a matter of federal law because, as we recently held in *Baker v. McCollan*, 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433] "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Consti-

tution and laws'" of the United States. The answer to that inquiry disposes of this case.

Having found that the alleged acts and omissions of Latimer did not violate any Federal Constitutional rights of the plaintiff, the trial court's judgment of dismissal of this action with prejudice should be and hereby is

AFFIRMED.