Robert G. HOUTZ, Plaintiff,

v.

Gary DELAND, Gerald Cook, Victoria Palacios, Vicky Bridwell, David Franchina, Paul Giles, Mona Ladue, and Nola Phillips, Defendants.

No. 89–C–0429A.

United States District Court,
D. Utah,
Central Division.

Aug. 25, 1989.

Houtz, Draper, Utah, pro se.

## ORDER DISMISSING PLAINTIFF'S VERIFIED COMPLAINT

ALDON J. ANDERSON, Senior District Judge.

### I. INTRODUCTION

The plaintiff, Robert G. Houtz, an inmate at the Utah State Prison, filed suit under 42 U.S.C. § 1983, pro se and in forma pauperis, claiming that the defendants denied him adequate access to the courts and that his liberty was restrained improperly. The case was referred to the United States Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B), and the Magistrate's Report and Recommendation was received by the court on June 20, 1989. The major issue before the court is whether the court should order the case dismissed as frivolous under 28 U.S.C. § 1915(d) because the plaintiff has not alleged facts upon which the court can order relief, or direct that service of process issue against one or more of the defendants. Because the plaintiff does not have a viable cause of action, his complaint is ordered dismissed in its entirety.

### II. FACTUAL BACKGROUND [1]

Plaintiff currently is serving a zero to six year sentence at the Utah State Prison for automobile homicide and three misdemeanor offenses. Complaint, ¶ 8. Shortly after entering prison, the plaintiff was evaluated by prison caseworker Vicky Bridwell, one of the defendants, in preparation for his parole hearing. Plaintiff alleges that, in attempting to determine a recommended parole date for the plaintiff, Ms. Bridwell

---

1. The facts are taken from the complaint and its accompanying exhibits.

improperly added a felony arrest for extortion, thus adding additional time to his recommended prison term.[2] Furthermore, plaintiff claims that the Board of Pardons utilized the allegedly incorrect information when it determined that the plaintiff should serve a total of 60 months in prison. Following the Board's determination, the plaintiff attempted unsuccessfully to demonstrate the error in computation to another caseworker, defendant Mona Ladue, and also filed an institutional grievance with the Utah State Prison which was subsequently denied. Although the complaint is not specific, from documents filed with plaintiff's complaint the court believes that defendants Giles, Franchina, and Phillips were involved with the denial of this grievance.

Because plaintiff was unable to receive what he believed to be the appropriate relief from prison and Board officials, he requested on four separate occasions, over a period of two months, to see one of the contract attorneys at the prison. Although plaintiff claims that "no attorneys came or offered help" in response to these requests, Complaint, ¶ 19, later in the complaint plaintiff notes that Danny Quintana, an attorney, wrote the Board of Pardons on the plaintiff's behalf concerning the alleged improper assessment. In reply to Mr. Quintana's letter, the Board stated that, in the plaintiff's case, "the Board felt that the guidelines were not appropriate in deciding his parole date," and that because of this fact the conviction which allegedly led to the improper parole date "would not have made a difference in the outcome of Mr. Houtz's hearing." Complaint, ¶ 27; Complaint, Exhibit 9 (Letter from Paul W. Sheffield, Administrator, Board of Pardons, to Danny Quintana dated December 16, 1989[sic]).

## III. ANALYSIS

Basically, plaintiff alleges two separate causes of action. The first is that prison officials at the Utah State Prison denied the plaintiff access to the courts. Second, plaintiff argues that, because a felony was added improperly to his record, he will serve a longer than necessary prison term. Each of these theories will be addressed in turn.

### A. Access to the Courts

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). This constitutional right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498; *see also Nordgren v. Milliken,* 762 F.2d 851 (10th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). Utah officials apparently have chosen to follow the second of these requirements by providing outside legal counsel to the prisoners at the Utah State Prison.

Plaintiff has not alleged facts sufficient to show a violation of the requirement found in *Bounds.* The scheme of providing contract attorneys at the Utah State Prison meets the requirements of the Constitution, *see Nordgren, supra,* and, as plaintiff himself admits, his case was reviewed by Danny Quintana, one of the contract attorneys. Furthermore, plaintiff has not demonstrated that he was harmed in any way by the alleged deficiencies in the Utah prison's legal assistance program. Although plaintiff may have suffered a brief delay in obtaining legal help, the court finds that the delay in this case did not impermissibly violate the plaintiff's right of access. Given the ever-increasing volume of cases filed by prisoners challenging prison conditions, some delay must be tolerated, especially when no prejudice to the prisoner results. *See Twyman v. Crisp,* 584 F.2d 352, 359 (10th Cir.1978) (noting that "[s]ome delays in access to the

---

2. Plaintiff claims that he was sentenced to a misdemeanor, mailing unmailable matter, not a felony. Also, he claims that two misdemeanor charges appeared on his record that were not attributable to him. Complaint, ¶¶ 10, 14.

courts are inevitable," and that the prisoner plaintiff, who wanted free postage for legal documents, was not entitled to relief because the delay created by the stamp policy did not prejudice him).

### B. *Duration of Confinement*

■ Plaintiff's second claim for relief essentially challenges the duration of his confinement. He alleges that prison caseworkers and the Board of Pardons improperly imputed to him a felony conviction when, according to plaintiff, he was convicted only of a misdemeanor. Plaintiff argues that this improper assessment results in his serving a longer prison term.

In his complaint, plaintiff asks for declaratory and injunctive relief, as well as monetary damages for the alleged constitutional violations. Organizing the analysis around the relief plaintiff seeks provides a useful way of dealing with the underlying legal questions.

The United States Supreme Court in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), a case also brought under 42 U.S.C. § 1983, held that

> when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.

*Id.* at 500, 93 S.Ct. at 1841. This language from *Preiser* is applicable in this case. In asking for declaratory relief, plaintiff petitions this court to declare that he is entitled to a speedier release from prison. *Preiser*

unequivocally holds that this type of relief is available only through a habeas corpus petition. Hence, petitioner's prayer for declaratory relief is hereby dismissed as frivolous.[3] 28 U.S.C. § 1915(d).

■ Turning now to the claims for injunctive relief and monetary damages, it is clear that several of the defendants are not properly before the court. By its own terms section 1983 requires that each defendant *cause* the harm alleged. *See* 42 U.S.C. § 1983; *Lee v. Town of Estes Park,* 820 F.2d 1112, 1116 n. 3 (10th Cir.1987) ("The plain language of § 1983 requires that causation be established before liability can attach, 42 U.S.C. § 1983, and it is a necessary element of any § 1983 claim.") *citing City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985). In this case, only the Board of Pardons could have caused the harm plaintiff complains of as the Board of Pardons possesses the authority to decide when persons are released on parole. Utah Code Ann. § 77–27–5 (Supp.1989). Defendant Victoria Palacios, the only member of the Board of Pardons named in the complaint, is the only defendant who could have utilized the improper calculation that defendant alleges. Accordingly, the claims against the remaining defendants are dismissed. 28 U.S.C. § 1915(d).

■ Plaintiff's prayer for monetary damages against Ms. Palacios is also frivolous and is hereby dismissed. Members of the Board of Pardons are absolutely immune from damages liability for actions taken in performance of the Board's official duties regarding the granting or deny-

---

**3.** The plaintiff previously filed a habeas corpus petition which was also dismissed as frivolous. *See Houtz v. Cook,* Case No. 88–C–1142G (D.Utah 1989) (Greene, J.). Plaintiff points out in his complaint in the present case that the United States Magistrate, in the course of recommending dismissal of plaintiff's habeas corpus petition in *Cook,* stated that plaintiff could file a section 1983 action if appropriate. The plaintiff responded to this language with the present action.

By dismissing plaintiff's claim for declaratory relief the court is aware that plaintiff could interpret this action as contradicting what the Magistrate wrote in his Report dismissing the

habeas corpus petition. Plaintiff has in fact raised this concern. *See* Objection, ¶ 9. However, the Magistrate did not *rule* that plaintiff would prevail if he filed a 1983 action, he merely suggested that it *might* be appropriate. The Magistrate's suggestion is irrelevant here for at least two reasons. The first is because *Preiser* mandates this court's present ruling. Second, the suggestion was made in the context of another action before a different judge. Without expressing any view as to the rightness or wrongness of that decision, if plaintiff believes that the Magistrate and Judge Greene were wrong in their decision in *Cook,* plaintiff's proper forum is before the Tenth Circuit on appeal.

ing of parole. *Knoll v. Webster*, 838 F.2d 450, 451 (10th Cir.1988).

All that remains is plaintiff's prayer for injunctive relief against Ms. Palacios. To determine whether plaintiff is entitled to the relief he seeks, the court must decide whether the improper calculation possibly could violate the constitutional provisions plaintiff cites in his complaint. Plaintiff claims violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses.

■ After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (citations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* The plaintiff has failed to allege sufficient facts from which the court can infer that Ms. Palacios, on behalf of the Board, violated the standard articulated in *Whitley*. The Utah Legislature has charged the Board of Pardons with broad authority to decide when, and if, a person is entitled to an early release from prison. Utah Code Ann. § 77–27–5(1)(a) (Supp. 1989). Given the broad discretion the Board enjoys, and the Board's letter to Mr. Quintana which states that the alleged improper calculation was not a dispositive factor in plaintiff's case, the court holds that Ms. Palacios, as a member of the Board of Pardons, did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

■ The plaintiff next claims that Ms. Palacios violated the Equal Protection Clause of the Fourteenth Amendment. This claim is dismissed as frivolous because plaintiff has not alleged facts on which he could prevail under the legal standard for equal protection claims.

The United States Supreme Court has stated that "[u]nless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Public Schools*, —— U.S. ——, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988); *Vasquez v. Cooper*, 862 F.2d 250 (10th Cir.1988). Plaintiff has not alleged that he is a member of a suspect class or that he was denied a fundamental right. Therefore, to prevail he "must show that he is a member of a class that was denied a benefit available to other similarly situated individuals, and that such denial is not rationally related to legitimate state interests." *Vasquez*, 862 F.2d at 252.

In his complaint, plaintiff simply raises equal protection as a ground for relief but does not explain in detail how it was violated in this case. Nowhere does he allege that he is similarly situated with other prisoners at the Utah State Prison. Assuming that plaintiff meant to allege that he was afforded treatment different from other inmates by the Board of Pardons, in other words, that errors like the one alleged in this case do not occur frequently or if they do occur that they are rectified, or that inmates who had committed crimes worse than the plaintiff's were assigned parole dates earlier than his, plaintiff would still fail to state a claim cognizable under the Constitution. The plaintiff is not situated similarly with the other inmates at the Utah State Prison. *See, e.g., Sweazea v. Missouri Bd. of Probation & Parole*, 742 F.2d 482 (8th Cir.1984) (recognizing that prisoners are not similarly situated one with another). Each inmate brings a different set of circumstances, including his history, his crimes, and his rehabilitative progress while in prison, to the parole hearing. Parole decisions, by their very nature, require the Board of Pardons to look at the individual circumstances of the prisoner and his crimes. Only in this way can the Board decide if the prisoner before it is

ready to reenter society. In a case involving the United States Parole Commission, the Tenth Circuit stated that "[t]he Due Process and Equal Protection Clauses do not command symmetry within the probation and parole systems." *United States v. Shead*, 568 F.2d 678, 684 (10th Cir.1978). This statement has relevance here even though the focus in this case is on the state parole system. Similarly, the Ninth Circuit, analyzing California's parole system, noted that "[t]he Constitution does not make it legally impossible for a state, in granting or refusing parole, to make an individualized judgment in each case." *Bennett v. People*, 406 F.2d 36, 39 (9th Cir.), *cert. denied*, 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969). Plaintiff's equal protection claim fails because individual scrutiny of prisoners for parole purposes rationally promotes the legitimate end of the state legislature in ensuring detailed evaluation of prisoners prior to their release.

▇▇▇▇ Finally, plaintiff claims that Ms. Palacios did not afford him due process of law. The Due Process Clause applies only where governmental action deprives a person of liberty or property. U.S. Const. amend. XIV, § 1; *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–2104, 60 L.Ed.2d 668 (1979). The Supreme Court in *Greenholtz* held that a state may establish a parole system, "but it has no duty to do so." *Id.* The Court opined that

> [t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).

*Id.* Relying on this language, the Tenth Circuit, in 1984, held that Utah's statutory parole scheme at that time did not create a liberty interest cognizable under the Due Process Clause of the Fourteenth Amendment. *Dock v. Latimer*, 729 F.2d 1287 (10th Cir.), *cert. denied*, 469 U.S. 885, 105 S.Ct. 256, 83 L.Ed.2d 193 (1984). Although the Utah Legislature later amended the statutes which were discussed in *Dock*, this court holds that these amendments do not change the principle laid down in that case. Utah's present parole statute, like its predecessor, still requires the Board to decide, by majority decision, "when and under what conditions" prisoners in the Utah penal system *"may* be released upon parole." Utah Code Ann. § 77–27–5(1)(a) (Supp.1989) (emphasis added). Also, the statute still requires the Board to give prior notice of parole hearings, *id.* § 77–27–5(2), and to notify the prisoner in writing of the Board's decision. *Id.* § 77–27–7(2). Most importantly, the statute provides that "[t]he release of an offender shall be at the initiative of the board," although a prisoner can apply for release. *Id.* § 77–27–9(1).

The use of the word "may" in the Utah statute is of particular importance, as it denotes discretion on the part of the Board. As the Supreme Court has noted, statutes phrased in mandatory terms such as "shall" or statutes that create a presumption of release often prompt courts to find a liberty interest. *See Board of Pardons v. Allen*, 482 U.S. 369, 379 n. 10, 107 S.Ct. 2415, 2421 n. 10, 96 L.Ed.2d 303 (1987) and cases cited therein. In *Allen*, the Court held that the Montana parole statute, which provided that "the board *shall* release on parole . . . ," created a liberty interest protected by the Due Process Clause. *Id.* at 376, 107 S.Ct. at 2420. By contrast, the Court noted that several Courts of Appeals, including the Tenth Circuit in *Dock*, have held that "statutes or regulations that provide that a parole board 'may' release an inmate on parole do not give rise to a protected liberty interest." *Id.* at 379 n. 10, 107 S.Ct. at 2421 n. 10.

This court, following *Greenholtz* and *Dock*, holds that the Utah parole statutes do not create a liberty interest recognizable under the federal Constitution. Because the plaintiff was not deprived of a Consti-

tutional right, his final claim fails and is ordered dismissed,

IT IS SO ORDERED.