**FLOYD JOSIAH, CECIL GRANT AND RAFAEL GREENLIDGE, Plaintiffs**

**v.**

**ALEXANDER FARRELLY, in his capacity as Governor of the Virgin Islands, KURT WALCOTT, in his official capacity as Warden of Golden Grove Correctional Facility and FRITZ LAWETZ, JR., in his official capacity as Chairman of the VIRGIN ISLANDS BOARD OF PAROLE, Defendants**

Civil No. 827/92

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 15, 1993

JEFFREY MOOREHEAD, ESQ., St. Croix, V.I., *for plaintiffs*

DUDLEY HUGHES, ESQ. (Assistant Attorney General), St. Thomas, V.I., *for defendants*

SWAN, *Judge*

## MEMORANDUM OPINION

Before the Court is plaintiff Floyd Josiah's petition for a Writ of Habeas Corpus, challenging the Governor's refusal to approve his parole request, already favorably considered by the local Parole Board, thereby allowing his continued incarceration.

After the hearing and while the case was pending, the Governor approved the latest requests for parole by plaintiffs Cecil Grant and Rafael Greenidge. Therefore, these plaintiffs' cases are moot. However, Floyd Josiah's counsel has filed a Memorandum which informed the Court that Josiah wishes to proceed with the case on those matters of concern to him. For the reasons which follow, Josiah's petition for a Writ of Habeas Corpus will be denied.

## FACTS

Floyd Josiah ("Plaintiff") has raised a plethora of issues; however, the Court will address only those that it deems dispositive of the case on the merits.

In his petition, plaintiff offers a paucity of background information, including that plaintiff is currently incarcerated, serving a fifty years sentence. As gleaned from the petition, plaintiff asserts that he has been successfully rehabilitated, and on several occasions, the Board of Parole ("Board") has recommended that he be paroled. Nonetheless, Defendant Alexander A. Farrelly, Governor of the Virgin Islands ("Governor"), has disapproved all of plaintiff's requests for parole.

Plaintiff further asserts that favorable recommendations for his parole by numerous persons of diverse backgrounds demonstrate community support for his petition for parole.

Plaintiff argues that Title 5 V.I.C. Section 4604 of the Virgin Islands Code gives him a Fourteenth Amendment United States Constitution liberty interest in his parole requests, entitling him to certain due process considerations. He also asserts that the Governor's failure to explain his numerous disapprovals of the Board's favorable recommendations violates plaintiff's constitutional Due Process Rights. Lastly, plaintiff asserts that the Virgin Islands parole statute is unconstitutional.

In response to plaintiff's contentions, defendants moved to dismiss the action, asserting two reasons. First, defendants argue that this Court lacks jurisdiction to hear this case. Second, defendants assert that plaintiff's petition for Writ of Habeas Corpus contains numerous procedural and substantive deficiencies warranting dismissal. Because any procedural deficiencies can summarily be cured or rectified, the Court will address defendants' claim that this Court lacks jurisdiction and then will proceed to resolve the merits of plaintiff's allegations. Therefore, the issues are as follows:

## ISSUES

1. Whether the Territorial Court has jurisdiction to hear local habeas corpus cases.
2. Whether Title 5 V.I.C. Section 4604 gives plaintiff a liberty or property interest in parole which is protected by the Due Process Clause of the Fourteenth Amendment in the United States Constitution.
3. Whether Due Process requires the Governor to explain his reasons for disapproving plaintiff's parole requests.
4. Whether the Virgin Islands Parole Statute is unconstitutional.
5. Whether the Attorney General is the Governor's Agent when attending Parole Board meetings.

The Court will discuss the issues in seriatem.

## DISCUSSION

*A. Jurisdiction*

■ For the reasons which follow, the Court has jurisdiction to hear this case.

Since October 1, 1991, the local judicial landscape in the Virgin Islands has been changed dramatically by the Territorial Court having acquired jurisdiction in all civil actions involving local matters. Essentially, with few exceptions, the Territorial Court is presently the Court of local jurisdiction. Yet, defendants assert that this court has no jurisdiction to hear this matter. For their contention, defendants rely exclusively upon Joseph v. DeCastro (District Court, Appellate Division No. 91-26, 1992), which defendants' counsel has informed the Court will be appealed.

Nevertheless, this Court's jurisdiction is best explained and understood by the "trilogy" of local jurisdiction, which are the 1984 Amendment to the Revised Organic Act of 1954, as amended, the case of Estate Thomas Mall, Inc. v. Territorial Court of the Virgin Islands; 923 F.2d 858 (3rd Cir. 1990), and Act No. 5594 of the Legislature of the Virgin Islands (Approved September 5, 1990), which became effective October 1, 1991, and codified in 4 V.I.C. § 76.

In 1984, the Revised Organic Act of 1954 was amended to allow for vesting in the local courts established by the Virgin Islands Legislature greater jurisdiction over local matters. (See Act of October 5, 1984 Pub. L. 98-454, 98 Stat 1738). This sentiment is enumerated by the Third Circuit Court of Appeals in the Estate Thomas Mall, Inc., supra, which says:

"In 1984, Congress passed an amendment to the Revised Organic Act of the Virgin Islands, 48 U.S.C. Section 1541 et. seq. (1954). The 1984 amendment, P.L. 98-454 eliminates concurrent jurisdiction in the District Court when jurisdiction is vested in the local courts of the Virgin Islands. . . ." pg. 260.

In the same decision, the Appellate Court explicitly said that the 1984 Amendment was not immediately in effect. Rather, the 1984 amendment's effective date must await passage of a local law, effectuating the jurisdictional changes from the District Court to the Territorial Court. The Appellate Court asserted, ". . . Accordingly, we now hold that section 1612(b) does not ex proprio Vigore divest the District Court of jurisdiction over local matters. Such divestment will not occur until the Virgin Islands Legislature enacts a law which effects the power created by the 1984 amendments." pg. 264.

Moreover, the Estate Thomas Mall Inc's decision appears to be consistent with the 1984 amendment to Section 22(b) of the Revised Organic Act of 1954 as amended which provides:

 (b) ". . . the District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the <u>jurisdiction over which is not then vested by local law in local courts of the Virgin Islands</u>. . . ." (underline supplied)

Act No. 5594 eliminated the then existing concurrent jurisdiction between both the District Court and the Territorial Court. Likewise, the Act divested the District Court of jurisdiction over local matters once that jurisdiction is vested or reposed in the Territorial Court. Act No. 5594 expressly repealed the language in the old section 76 of Title 4 of the Virgin Islands Code which included the language "The Territorial Court shall have original jurisdiction concurrent with that of the District Court in all civil actions . . . ." As its replacement, a new section 76 was enacted. The unambiguous language of the new section 76, is instructive and states in pertinent part:

 "Section 76. Original Jurisdiction

 (a) . . . effective October 1, 1991, the Territorial Court shall have original jurisdiction in all civil actions regardless of the amount in controversy;. . . ."

Lastly, the legislative history of the 1984 Amendment to Section 22(b) of the Revised Organic Act buttresses the contention that once the Territorial Court acquires jurisdiction, the District Court loses jurisdiction over local causes. The illuminating language is found in the Congressional Record H9574 9574 (September 14, 1984) which states in pertinent part:

 "The purpose of section 22(b) is to eliminate the present situation of both the district court and local court having jurisdiction over strictly local causes. <u>Upon the effective date the district court will no longer have jurisdicition over any cause over which local law has vested jurisdiction in the local courts.</u> The decision as to whether jurisdiction over strictly local causes should be vested in the district court or the local courts will be made by local law. At any time the local legislature may divest the local courts of jurisdiction over any cause which will automatically revest jurisdiction in the district court or <u>by vest-</u>

ing jurisdiction in the local courts, the local law will have the effect of divesting the district court of jurisdiction.

The only exceptions are those provided by federal law, such as diversity cases under 28 U.S.C. 1332 or causes involving a federal question under 28 U.S.C. 1331. In addition, under section 22(c), the district court will retain concurrent jurisdiction over closely related offenses." (underline supplied).

Undeniably, this case is a civil case. Section 76 supra says 'all' civil actions. "All" connotes each and every one of a particular thing, class, or category. Likewise, 'all' means without exception. Similarly, the word "All" denotes the "whole number of," "each" and "every." Baker v. Brown's Estate, 294 S.W. 2d 22, 25, 365 Mo. 1159 (1956). Not surprisingly, the word "all" as used in statutes and as commonly used usually does not admit of exceptions, additions or exclusions. Freight Ways Corp. of Delaware v. Nicholas, 137 N.W. 2d 900, 904, 258 Iowa 115 (1965); Cedar Rapids Community School District Linn County v. City of Cedar Rapids, 106 N.W. 2d 655, 695, 252 Iowa 205 (1960). Therefore, this case falls within the statutory, encompassing language of section 76 supra. Accordingly, based upon an Appellate Court decision, the enactment of both Federal law and Local laws, and its attendant legislative history, this Court has original jurisdiction to hear this civil case.

■ We are not unmindful of 5 V.I.C. § 1303 which states that ". . . writ of habeas corpus may be granted by the District Court,. . . ." But, since section 1303 supra was enacted, the 1984 amendment to the Revised Organic Act, 1954 and Act no. 5594 were subsequently promulgated, thereby irrefutably repealing by implication the District Court's jurisdiction to entertain habeas corpus petition under section 1303, supra. "A Repeal by implication may be found if provisions in two acts are in irreconcilable conflict or it is clear that an earlier act was intended to be replaced by a subsequent act. . ." Government of the Virgin Islands v. Mills, 935 F.2d 591 (3rd Cir. 1991). Additionally, a repeal by implication can be found "only when the Legislature's intention on the subject is "clear and manifest." United States v. Williams, 939 F.2d 721 (9th Cir. 1991).

Again, the intended purpose and objective of the 1984 amendment to the Revised Organic Act and Act No. 5594 supra, as manifested by their language and legislative history, are to divest the

District Court of jurisdiction over local habeas corpus petitions and in so doing repeal section 1302 by implication.

Considering that Act No. 5594 gives this Court "original jurisdiction in all civil actions," and this is a civil action, it escapes this Court how, as contented by defendants, this Court can lack jurisdiction to hear this matter.

*B. Due Process*

 Turning to the merits of the case, the focal point of discussion is the unambiguous language of two statutory sections in 5 V.I.C. §§ 4601 et seq. These sections are 4601 and 4604 which, provide:

"4601. Eligibility for Parole

Except for a prisoner sentenced to a term of life imprisonment without parole, every prisoner confined in any penitentiary, jail or prison for a violation of the Virgin Islands law for a definite term or terms of over 180 days or for the term of his natural life, whose record of conduct shows that he has observed the rules of the institution in which he is confined, upon recommendation of the Director of the Bureau of Corrections supported by the recommendation of a psychiatrist and/or psychologist, may be released on parole after serving one-half of such term or terms or after serving 15 years of a life sentence or of a sentence of 30 years or more or after serving the minimum sentence required by law, whichever is greater; Provided however, That the Board of Parole, subject to the approval of the Governor, in its discretion by at least a two-thirds affirmative vote of all its members, upon recommendation by the Director of the Bureau of Corrections, supported by the recommendation of a psychiatrist and/or psychologist, is authorized to fix an earlier eligibility date for the release of a prisoner on parole after serving one-third of his term or terms or after serving 10 years of a life sentence or of a sentence of 30 years or more. (underlined supplied)

4604. Conditions of Parole

If it appears to the Board of Parole from a report by proper officers of the penitentiary, prison or jail or upon application by a prisoner for release on parole that there is a reasonable probability that such applicant will live and remain at liberty with-

109

out violating the laws and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may, in its discretion, authorize the release of such applicant on parole.

The parolee shall be allowed to go outside of the penitentiary, prison or jail, upon such terms and conditions, as the Board of Parole prescribes. No release on parole shall become operative until the findings of the Board of Parole and the terms of the parole have been approved by the Governor; provided, however, if the Governor has not acted to disapprove the Board's findings and terms of parole within sixty (60) days after receipt thereof, the Board recommendation for parole shall be deemed approved." (underlined supplied)

Significantly, section 4601 supra uses the words "may be released on parole," and section 4604 supra uses the words ". . . the Board may, in its discretion, authorize the release of such applicant on parole." Unquestionably, these words in both sections eschew any interpretation of these sections suggesting that an inmate has a right to be paroled. Nonetheless, whether an inmate has a liberty or property interest in parole warranting due process protection is dependant upon whether the legislation creating a parole system uses "mandatory" or "discretionary" language. The two leading cases addressing protectable Due Process Right in parole are Greenholtz v. Inmate of Nebraska Penal and Correctional Complex, 441 U.S. 1316, 60 L.ED. 2d 668, 99 S.Ct. 2100 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed. 2d 303 (1987).

The United States Supreme Court has already enumerated the requirements for a due process claim in parole. (See, Greenholtz supra.) When government action deprives a person of liberty or property, the Due Process Clause is triggered. Thus, Courts must examine the nature of an individual's claimed interest when the person alleges a denial of due process. If a person possesses a legitimate claim or entitlement to a liberty or property interest, that interest becomes protectible under the Due Process Clause. Dock v. Latimer, 729 F.2d 1287 (10th Cir. 1984).

Generally, convicts do not have a protectible right to be released before the expiration of a valid sentence, because a valid conviction constitutionally extinguishes the convicts' liberty right. Significantly, the mere presence of a state parole system does not

110

automatically create a protected liberty interest in being paroled because "there is no constitutional or inherent right to parole." The fact that a state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained. Dock, supra. pg. 1290; Greenholtz, supra, pg. 2105; Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed. 2675 (1983).

■ Similarly, in Greenholtz, supra, the Court suggested that there is no liberty interest in parole release, derived either from the Constitution or from the mere existence of a discretionary parole system, to which procedural due process protection attaches. (See also Block v. Potter, 631 F.2d 233 (3rd Cir. 1980). Likewise, statutes which do not mandate a presumption of parole release do not create a protected statutory entitlement to parole on which an inmate can advance a due process claim. Wagner v. Gilligan, 609 F.2d 867 (6th Cir. 1979).

Nevertheless, states may establish a parole system that creates a statutorily protectible liberty interest in parole. The United States Supreme Court has suggested that statutes which prescribe mandatory parole also create a liberty interest that is entitled to due process protection. Greenholtz, supra.

. ■ In contrast, the High Court has also held that the Fourteenth Amendment due process clause does not apply to discretionary parole release determinations. Essentially, the Supreme Court explained that the absence or presence of mandatory language in a parole statute determines whether a liberty interest is created. Under a mandatory statutory scheme granting parole, parole is automatic once certain prerequisites are satisfied. Words such as "shall" and "must" are employed in such mandatory statutory schemes. These statutes create a reasonable expectancy of entitlement to parole. Significantly, the Nebraska Statute in Greenholtz states that the Board of Parole "shall" order a prisoner be released on parole unless there was a presence of one of the one disqualifying statutory factors. Therefore, says the Supreme Court, prisoners were entitled to some medium of due process. But, the Supreme Court cautioned and emphasized that "this statute has unique structure and language and thus whether any other state provides a protectible entitlement must be decided on a case-by-case basis." Greenholtz, pg. 2106.

■ Further, under the discretionary scheme, an inmate becomes eligible for parole when the prerequisites are satisfied, but

nothing mandates that parole be automatically granted. Therefore, no presumption exists for being released on parole. Accordingly, an evaluation of plaintiff's petition begins by scrutinizing the language of Virgin Islands parole statute, 5 V.I.C. § 4601 et seq.

Our local parole statute rarely employs mandatory language. Rather, the statute uses discretionary language such as "may be released" and "in its discretion" and "the Board may, in its discretion." Importantly, no provision in the parole statute suggests that parole is automatic once the criteria in Section 4601 are satisfied. Consequently, the statute only provides for discretionary parole.

The mandatory language in Section 4604 supra pertains to the Governor's review of parole requests. The section states:

> ". . . No release on parole shall become operative until the findings of the Board of Parole and the terms of parole have been approved by the Governor;. . ."

This provision neither requires nor encourages the Governor to approve parole recommendations, nor does this provision instruct the Governor to provide any reason or explanation when he refuses to approve a parole recommendation submitted by the Parole Board. Admittedly, the 1990 amendment to that section of the statute appears to complicate matters. But, the amendment is illusory as to employing mandatory words for parole. The 1990 amendment merely qualifies the then existing provision to provide a time limitation within which the Governor must act by stating:

> ". . .; provide however, if the Governor has not acted to disapprove the Board's findings and terms of parole within sixty (60) days after receipt thereof, the Board's recommendation for parole shall be deemed approved."

Plaintiff correctly argues that this proviso mandates an inmate's release on parole once the Governor fails to disapprove the Board's recommendation within the specified time. This proviso, however, fails to significantly change or amend the essentially discretionary nature of our parole statute or the discretionary power already conferred upon the Governor. The parole request is approved only if the Governor fails to act on the request within a prescribed period. The word "if" has never been noted for being mandatory in connotation. Moreover, the statutory proviso does not compel the Board to recommend parole for all applicants meeting the eligibility criteria. Consequently, the Virgin Islands parole statute remains distinguishable from the one in Greenholtz, supra.

112

The purpose of the sixty days provision is to allow the Governor a reasonable time within which to exercise his discretion. Without that provision, the Governor can hold the Board's recommendation for an inordinate or indefinite period, and, in essence, by not acting on its recommendations can abrogate the purpose of having a parole system. Consequently, a reasonable period was enacted within which to compel the Governor to act on the Board's recommendation, but the same provision does not change the discretionary nature of the parole system.

Importantly, the Court took testimony from the Governor's legal counsel at Government House. (Legal counsel is different from the Assistant Attorney General representing the defendants in this case). From counsel's testimony, including entries in the daily mail log at the Governor's office, the Court concluded that at no time in the past has the Governor failed to act on a Board's recommendation within sixty (60) days after receipt of a written recommendation on behalf of plaintiff.

■ In Allen, supra, the United States Supreme Court compared the Montana parole statute in that case to the Nebraska statute in Greenholtz, supra, and found them to be virtually indistinguishable. The Court said, "Significantly, the Montana Statute, like the Nebraska statute, uses mandatory language ("shall") to "create[s] a presumption that parole release will be granted "when the designated findings are made." Allen, supra, pg. 2416. The pertinent part of the Montana Statute says "Prisoners eligible for parole. (1) Subject to the following restrictions, the board *shall* release on parole . . . any, person confined in the Montana State prison or the Women's Correction Center . . . when in its opinion . . . there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the Community." Allen, supra pg. 2430. The Supreme Court also noted the expressed purpose identified in the title of the Montana statute, and upon further analysis, concluded that the language in the Montana statute creates a liberty interest in parole that is entitled to due process protection. The High Court specifically held in Allen, supra that a parole statute providing that the [parole] board "shall" release prisoner subject to certain restrictions, creates a due process liberty interest in parole release. pg. 2415. As previously indicated, this scenario is not replicated in the local statute.

■ Despite the 1990 amendment, neither the unambiguous language nor the mechanism created by the Virgin Islands parole statute duplicates the statutes found in either Greenholtz or Allen, supra. Accordingly, this Court finds that parole in the Virgin Islands is a privilege and not a right, as can be gleemed from the language of section 4601, supra which says *"may* be released after serving one-half of such term . . .," instead of 'shall' be released or 'will' be released. Specifically, pursuant to local statute the expectation for parole only occurs if the Board makes a favorable recommendation and the Governor approves that recommendation, of he fails to act upon the Board's favorable recommendation within the prescribed time of sixty (60) days after receipt of the Board's recommendation for parole. This circumstance, however, is significantly contrasted with a situation in which a statute, as in Allen supra, gives an inmate a right to parole ab initio, thereby triggering a property interest and a due process protectible interest.

Local case precedent buttresses the unavoidable conclusion that Virgin Islands law provides only for discretionary parole. In Baptiste v. Bureau of Corrections, 18 V.I. 597 (DCVI 1981), the District Court explained that "the scheme of the Virgin Islands Parole statute and the regulations implementing it, are that if certain requirements are met, parole may be granted. There is no mandate that parole be granted." Adhering to Greenholtz, supra, the District Court noted the clear absence of mandatory language in the Virgin Islands Statute thereby leaving the decision regarding parole to the Discretion of the Parole Board. Baptiste, supra, pg. 599.

Additionally, the regulations implementing our local parole statute, V.I. R & R Section 4601-1 et seq., further establish the discretionary nature of parole release determinations. The provisions inform that to qualify for parole, both the Warden and a psychiatrist or psychologist must recommend the applicant for parole. Section 4601-2 states, in pertinent part, that "Recommendation by the Board for the paroling of a prisoner may be made . . . if, in the opinion of the Board, his release is not incompatible with the welfare of society. . . ." Also, the Board's recommendation of parole is submitted to the Governor for approval. See Section 4601-4. Therefore, the Rules and Regulations, to some extent, track the local statute. But, no rule or regulation compels or obligates the Parole Board to recommend any inmate for parole. Besides, any favorable

114

recommendation by the Board must still pass the Governor's discretionary approval before the parole recommendation can be approved. Section 4601-4 supra.

Therefore, this Court concludes that neither the United States Constitution nor the Virgin Islands' discretionary parole statute provides plaintiff with a protectible liberty interest in parole nor does the local statute create a legitimate expectation of parole. The Virgin Islands statute only establishes a discretionary parole system. Accordingly, the Fourteenth Amendment Liberty Interest does not apply to our local discretionary parole determinations, as in this case.

## C. Governor's Failure To State His Reason for Denying Parole

■ Essentially, Section 4601-11 of the Virgin Islands Rules and Regulations, unlike the parole statute, mandates that the Board provides its reasons for denying an inmate's application for parole. This mandate applies solely to the Board and not to the Governor. If there was an intent to make the same provision applicable to the Governor, the appropriate language most certainly would have been added to the Rules and Regulations to comport with such an intent. Significantly, the Heading of the Rules says, "Rules of the Parole Board," thereby exempting the Governor from its applicability. Furthermore, section 4601-11 of the Rules and Regulations speaks of 'the Board's decision, when the Board denies an application' and 'when the Board's recommendation is favorable.' Again, a reference to the Governor is conspicuously absent in section 4601-11 supra.

The uncontroverted fact is that nothing in our local statute requires the Governor to state his reason for denying an inmate's application for parole. Additionally, the case of Connecticut Boards of Pardons v. Dumschut, et al, 452 U.S. 458, 69 L.ED. 2d 158, 101 S.Ct. 2460 (1981) is most instructive on this issue. The Supreme Court states:

> It is clear that the requirement for articulating reasons for denial of parole in Greenholtz derives from [the) unique mandates of the Nebraska statutes. Thus, although we noted that under the terms of the Nebraska statute, the inmates' expectancy of parole release "is entitled to some measure of constitutional protection,: we emphasized that "this statute has unique structure and language and thus whether any other state stat-

ute provides a protectible entitlement must be decided on a case-by-case basis."

"A state cannot be required to explain its reasons for a decision when it is not required to act on prescribed grounds." 101 S.Ct. at 2465

Similarly, the Governor is not required to act on prescribed grounds. Therefore, the Governor has no obligation to explain his reasons for exercising his discretion when disapproving an inmate's application for parole, especially when that inmate has no cognizable protectible liberty interest in parole.

## D. *Constitutionality of the Local Statute*

 A reading of Greenholtz, Allen, and Dumschat, supra and the holdings and issues in those cases support the conclusion that the Virgin Islands Parole Statute which provide for discretionary parole is constitutional. Parole is a privilege and not a right; it is offered to an inmate as part of the state's umbrella efforts for rehabilitating inmates. The terms and conditions of parole are dictated by the state and only upon conditions allowed by the state.

Moreover, the indelible words of the High Court in Greenholtz supra pg. 2104 remain the benchmark for parole statutes. The Court said:

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released in indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)."

The plain language of the Virgin Islands Parole Statute fails to confer upon an inmate any statutory entitlement or right to parole; therefore, to deny an inmate parole based upon the discretionary language of a parole statute does not deprive him of any property right or due process right cognizable under the United States Constitution or under local law.

116

*E. The Attorney General, as a Member of the Board, Is Not the Governor's Agent.*

 Plaintiff's counsel also advances another basis for plaintiff's release. He argues that the language "if the Governor has not acted to disapprove the Board's findings an terms of parole within sixty (60) days thereof, the Board's recommendation for parole shall be approved" means that the sixty (60) days commence when the Governor receives notice or knowledge of the Board's decision. Furthermore, say counsel, since the Attorney General is an ex-officio, non-voting member of the Board and a member of the Governor's cabinet, the Attorney General is the Governor's agent on the Board. Therefore, continues counsel, the knowledge of the agent is imputed to the principal in accordance with the law of Agency. Counsel then concludes that the sixty days within which the Governor must act commences on the same day of the Board's favorable recommendation on a parole application. And, in accordance with section 4604 supra, the Board's favorable recommendation shall be deemed approved, if the Governor does not disapprove the Board's recommendation within sixty days after the meeting in which the decision it is made. Counsel's argument is misplaced.

First, when the Attorney General serves on the Board, he is not there as the Governor's agent, because the Governor has no authority to appoint the Attorney General to the Board. The Attorney General is a member of the Board by virtue of 5 V.I.C. § 4511(b) which states:

"The Board shall be composed of eight members as follows:
(1) The Attorney General of the Virgin Islands, who shall serve as a member ex officio, without vote; and"

Moreover, the Governor cannot interfere with the Attorney General's duties or obligations to the Board including attending Board meetings, without himself violating the law. Additionally, section 4511(b) supra is consistent with the statutory duties of the Attorney General "to furnish legal advice to . . ., boards, commissions, . . . concerning any matter arising in connection with the exercise of their official powers and duties . . . ." See 3 V.I.C. § 114(7). Interestingly, the Attorney General's presence at Board meetings is never considered in constituting a quorum. (see 5 V.I.R. & R., Section 4601-7(c)). Thus, this Court concludes that when the Attorney General sits on the Board, he is there in the capacity of legal advisor to the Board and not as an agent of the Governor.

There is another reason to discount counsel's argument. The statutory language of 5 V.I.C. is unambiguous as to the identity of what the term "receipt thereof" references. The language is devoid of any reference to a "notice" to be received. There is absolutely nothing from which one can plausibly say that a 'notice' is contemplated by that language. However, preceding the "receipt thereof", which contemplates something tangible, are the words "the Board's finding and terms of parole . . . after receipt thereof." Clearly, the "receipt thereof" refers to the Governor receiving the Board's "findings and terms of parole." These findings and terms of parole are always in writing. It would require a tortuous reading of the statutory language to conclude that the 'receipt thereof' refers to the date the Governor is informed of the Board's parole recommendation, whether through a third person or otherwise. Besides, it is the 'Board's findings and terms of parole' that the Governor must act upon within sixty days; but in order to act, he must first receive something. The Court has no compunction in concluding that the "receipt thereof" does not refer to notice but to the Governor receiving 'the Board's findings and terms of parole.'

## CONCLUSION

For the reasons above enumerated, the plaintiff's request for a Writ of Habeas Corpus is DENIED.

## JUDGMENT

This matter came before the Court on plaintiff Floyd Josiah's petition for a writ of habeas corpus. Being fully advised in the premises and in accordance with the Court's memorandum opinion of even date, it is hereby

ORDERED that plaintiff's petition for a writ of Habeas Corpus is DENIED.